UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY M. RANDOLPH,
    Plaintiff,

v.                                          Case No. 3:24-cv-1631 (OAW)

ALLISON CHANCE,
    Defendant.

## INITIAL REVIEW ORDER

Self-represented Plaintiff Anthony Randolph, a sentenced inmate at New Haven Correctional Center,[1] has filed a complaint alleging that Probation officer Allison Chance violated his constitutional rights by refusing to help him find housing and then later by providing false testimony during his probation revocation hearing.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b). Accordingly, after the court's review of the plaintiff's allegations, the complaint hereby is **DISMISSED.**

---

[1] Plaintiff was sentenced to six years' imprisonment on January 19, 2023, and is currently housed at NHCC. *See* Inmate Information, Connecticut Department of Correction (DOC) website, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=304309 (last visited July 21, 2025).

1

**I.    RELEVANT FACTS**

While the court does not set forth all the facts alleged in Plaintiff's complaint, it summarizes the basic factual allegations to provide context for its instant ruling.

Plaintiff entered the custody of the Connecticut Department of Correction (DOC) in November 2020. *See* Compl., ECF No. 1 ¶¶ 4–5. Plaintiff agreed to live in a rehabilitation facility upon his release from prison in April of 2022. *Id.* ¶ 7. While living there, Plaintiff met with his probation officer, Allison Chance, as required.[2] *Id.* ¶ 8. Plaintiff also obtained employment with a cleaning company two weeks after he entered the rehabilitation facility. *Id.* ¶ 9. The rehabilitation facility employed a staff member named "Unis," who "was infamous for creating conflict [and] confusion." *Id.* ¶ 10. Unis acted unprofessionally around Plaintiff. *See id.* ¶ 13.

---

[2] Connecticut law provides that a term of imprisonment may be followed by a term of probation or "special parole," Conn. Gen. Stat. § 53a-28(b), and that prisoners sentenced to more than two years in prison may be released early onto parole, Conn. Gen. Stat. § 54-125a. Whether Officer Chance is a probation officer or parole officer is constitutionally insignificant, *cf. Gagnon v. Scarpelli*, 411 U.S. 778, 782 n.3 (1973) ("Despite the undoubted minor differences between probation and parole, . . . revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole."), and courts use the terms interchangeably. *See, e.g., Range v. Comm'r of Soc. Sec.*, No. 20-CV-5852 (BMC), 2021 WL 5834277, at *1 (E.D.N.Y. Dec. 9, 2021) (using "the terms probation officer and parole officer interchangeably . . . as any distinctions between them are immaterial . . . ."). However, it does appear that in 2020, Plaintiff was sentenced to 10 years in prison suspended after the service of 4 years, followed by 3 years of probation, and that he subsequently was found in violation of his probation in 2023, at which point his probation appears to have been revoked and he appears to have been sentenced to an additional 6 years in prison. *See* Criminal Conviction Case Detail, N23N-CR18-187652, available at: https://www.jud2.ct.gov/crdockets/SearchByDefDisp.aspx (last visited Jul. 21, 2025). While it is unclear whether Plaintiff ever was released onto parole before transitioning from prison to probation, the court will presume that the Plaintiff's allegations relate to a time when he was on probation following his imprisonment.

Plaintiff complained about Unis during his periodic meetings with Officer Chance. *Id.* at ¶ 14. Officer Chance responded to Plaintiff's complaints with "absurd" and "rude" comments, "demanding" that Plaintiff leave the rehabilitation facility. *Id.* Plaintiff told Officer Chance that he had employment with the cleaning company, which made Chance "irate." *Id.* Chance encouraged Plaintiff to quit his employment with the cleaning company to work for her friend in another city. *Id.* This "made no sense" to Plaintiff. *Id.*

Plaintiff's problems with Unis continued. While searching Plaintiff at the rehabilitation facility, Unis asked Plaintiff if he would like a female staff member to search him. *Id.* ¶ 16. Plaintiff "jokingly" responded that he "wouldn't mind that at all." *Id.* The facility director summoned Plaintiff to speak with him several weeks later. *Id.* ¶ 17. The director accused plaintiff of "asking female staff to pat him down." *Id.* ¶ 18. The director told him Plaintiff that Plaintiff could not leave the facility until he met with Chance. *Id.* Plaintiff was kicked out of the rehabilitation facility shortly after his meeting with the director, leaving Plaintiff homeless. *Id.* ¶ 20.

Plaintiff met with Officer Chance after becoming homeless. *Id.* ¶ 21. Chance told Plaintiff that she could not help him with anything, and that Plaintiff should have taken the job with Chance's friend. *Id.* Plaintiff continued attending court-mandated groups and meeting with Chance while he was homeless. *Id.* ¶ 22. Chance refused to help Plaintiff find housing because Plaintiff had not taken the job with Chance's friend. *Id.*

While homeless, Plaintiff was assaulted in a store while selling "body scented oils." *Id.* ¶ 27. Plaintiff was charged with assault for defending himself and was jailed for violating his probation. *See id.* ¶¶ 27–28. Plaintiff posted bond and contacted Chance.

3

*Id.* ¶¶ 28–29.  Chance's "only concern" was how Plaintiff "got out."  *Id.* ¶ 29.  Plaintiff maintains that Chance's "attitude" towards Plaintiff resulted from Plaintiff's refusal to take a job with her friend, with whom "she had a contract."  *See id.* at 17.  Chance later provided "defaming testimony" at Plaintiff's probation revocation hearing.  *See id.* at 17–18.  Plaintiff was sentenced to six years' imprisonment for violating his probation.  *Id.* at 17.

Plaintiff asserts claims for (1) negligence, (2) abuse of process, (3) deliberate indifference, (4) cruel and unusual punishment, and (5) violations of due process.  *See id.* at 2.  Plaintiff seeks monetary damages.  *Id.* at 22.

## II.   DISCUSSION

"A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation."  *Huertas v. Guadarrama*, No. 3:25-cv-118 (SRU), 2025 WL 1868045, at *2 (D. Conn. July 7, 2025) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  "Personal involvement," in turn, "requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."  *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (footnote omitted).

Construing Plaintiff's *pro se* complaint liberally and "interpret[ing] [it] to raise the strongest arguments that [it] suggest[s]," *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted), the Court can discern only two intentional actions by Chance that could potentially be of constitutional significance: (1) her refusal to help Plaintiff find housing and (2) her providing "defaming testimony" at Plaintiff's probation

4

revocation hearing.  *See* Compl., ECF No. 1 ¶ 22; *id.* at 17–18.  The question on initial review is whether these actions can form the basis for a constitutional claim against Officer Chance.  *See* 28 U.S.C. § 1915A(b) (requiring a court to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief.").

### A. Absolute and Qualified Immunity

Officer Chance is Plaintiff's probation officer.  Compl., ECF No. 1 ¶ 8.  "As a general matter, probation officers are entitled to immunity in the performance of their duties, but the type of immunity afforded depends on whether 'the duties of the defendants were judicial or prosecutorial, which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity.'"  *Dettelis v. Sharbaugh*, 919 F.3d 161, 164 (2d Cir. 2019) (quoting *King v. Simpson*, 189 F.3d 284, 288 (2d Cir. 1999)).  "[I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches."  *Forrester v. White*, 484 U.S. 219, 227 (1988) (emphasis original).  Thus, courts take "a 'functional' approach to immunity questions other than those that have been decided by express constitutional or statutory enactment."  *Id.* at 224.  Under this functional approach, courts "examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted" and then "evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions."  *Id.*

"Functions most apt to be accorded absolute, rather than qualified, immunity are those integrally related to the judicial process." *Dorman v. Higgins*, 821 F.2d 133, 136 (2d Cir. 1987). "Many functions intimately connected with the judicial process are characterized by a high degree of discretion in the decisions to be made[.]" *Id.* "Absolute immunity in the performance of these functions is needed in order that the official not, out of fear of exposure to a civil suit for damages, be intimidated in the exercise of his discretion and the proper performance of his duties." *Id.* "The safeguards surrounding the performance of functions closely connected with the judicial process minimize the risks that unreasonable official action will occur or, if it occurs, go uncorrected." *Id.*

With this in mind, the United States Court of Appeals for the Second Circuit has extended absolute immunity to probation officers "preparing and furnishing presentence reports to the court," *Dettelis*, 919 F.3d at 164 (quotation marks omitted) (citing *Dorman*, 821 F.2d at 137; *Peay v. Ajello*, 470 F.3d 65, 69 (2d Cir. 2006) (concluding that Connecticut probation officers are "entitled to absolute immunity in suits for damages arising out of their preparation and submission of presentence reports")), and "initiating parole revocation proceedings and in presenting the case for revocation to hearing officers." *Id.* (quotation marks omitted) (citing *Scotto v. Almenas*, 143 F.3d 105, 112 (2d Cir. 1998); *Victory v. Pataki*, 814 F.3d 47, 65 (2d Cir. 2016)). However, the Second Circuit has extended only qualified immunity to probation officers "performing investigatory duties," such as "the filing of a violation report or recommending the issuance of an arrest warrant[.]" *Id.* (citing *Scotto*, 143 F.3d at 111; *Roberts ex rel. Estate of Roberts v. Lapp*, 297 F. App'x 67, 69 (2d Cir. 2008) (summary order) (holding state parole officer entitled

to qualified immunity in recommending that parole warrant issue); *Malik v. Mackey*, 268 F. App'x 83, 84 (2d Cir. 2008) (summary order) (holding state parole officer entitled to qualified immunity in filing parole violation charges)).

The Second Circuit has not considered whether a probation officer is entitled to absolute or qualified immunity for their testimony at a probation revocation hearing, but it has held that a probation officer was entitled "to absolute immunity for his statements to [a state court judge] at [an] in-chambers conference" preceding "a fact-finding hearing on allegations that [the plaintiff] violated the terms of his probationary sentence." *Baker v. Spinner*, 826 F. App'x 105, 106–07 (2d Cir. 2020) (summary order).  The *Baker* court so held because the probation officer "made these statements under 'judicial direction,'" *id.* at 107 (quoting *Scotto*, 143 F.3d at 112), and "there were sufficient procedural safeguards at the conference."  *Id.* (citing *Sykes v. James*, 13 F.3d 515, 521 (2d Cir. 1993) (noting that "all the other protections of the judicial process" were present to support granting absolute immunity to a parole officer who submitted an affidavit in opposition to a parolee's state habeas petition where "the proceeding was adversarial in nature; it was conducted by a judicial officer who rendered the final decision; and it was subject to judicial review")).  The *Baker* court reasoned that "[t]he conference was adversarial in nature as both parties' counsel were present, [the judge] who conducted the conference also decided [the plaintiff's] final sentence, and the proceeding was subject to judicial review as [the plaintiff] later succeeded in vacating his sentence based on [the probation officer's] untruthful statements."  *Id.*

7

That Officer Chance gave her statement to a judge in a court proceeding, as opposed to an "in-chambers conference," is insufficient to distinguish Plaintiff's case from *Baker*. In each case, the probation officer provided their statement for the benefit of the judge making the revocation decision. And in each, "sufficient procedural safeguards" were in place to "minimize the risks that unreasonable official action will occur or, if it occurs, go uncorrected." *Dorman*, 821 F.2d at 136. If anything, greater procedural safeguards would have been in place at a formal probation revocation hearing than an in-chambers conference because Officer Chance would have been required to testify under oath subject to the criminal penalties of perjury and would have been subject to cross-examination. *See Rolon v. Henneman*, 517 F.3d 140, 146 (2d Cir. 2008) (holding that police officer testifying at disciplinary hearing was entitled to absolute immunity because the officer "performed substantially the same function as witnesses in judicial proceedings with nearly identical procedural safeguards: he took an oath, offered testimony, responded to questions on direct and cross-examination, and could have been prosecuted for perjury."). Accordingly, Chance is entitled to absolute immunity for any testimony she gave during Plaintiff's revocation hearing.

Officer Chance is not, however, entitled to absolute immunity for refusing to assist Plaintiff with finding housing while supervising him because "the duties of a probation officer in supervising a probationer clearly are administrative in nature and have no bearing on the court's adjudicative function[.]" *United States v. Inserra*, 34 F.3d 83, 88 (2d Cir. 1994) (internal citation omitted). But while Officer Chance is not entitled to absolute immunity for this action, she nonetheless may be entitled to qualified immunity.

8

*See Dettelis*, 919 F.3d at 164 (probation officer's administrative functions may be protected by qualified immunity).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights." *Tripathy v. McKoy*, 103 F.4th 106, 116 (2d Cir. 2024) (quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "[B]ecause the Court's obligation to conduct an initial review requires consideration of whether any defendant may be immune from relief, the Court may appropriately consider qualified immunity at the initial review stage." *Lexis v. Faucher*, No. 3:18-cv-00956 (JAM), 2019 WL 2357539, at *3 (D. Conn. June 3, 2019) (internally citing 28 U.S.C. § 1915A(b)(2)).

A court conducts its initial review of a complaint using the same standard it uses to evaluate a defendant's motion to dismiss brought Fed. R. Civ. P. 12(b)(6). *Manon v. Hall*, No. 3:14-cv-1510 (VLB), 2015 WL 8081945, at *3 (D. Conn. Dec. 7, 2015) (collecting cases) (noting that "[s]ection 1915A and Rule 12(b)(6) require the same substantive analysis."). "Although it is possible for a qualified immunity defense to succeed on a motion to dismiss, such a defense faces a formidable hurdle and is usually not successful[.]" *Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022) (cleaned up). This is because "the facts supporting the defense must appear on the face of the complaint or in its attachments and documents incorporated by reference" and "the plaintiffs are entitled to all reasonable inferences from the facts alleged, not only those that support their claim, but also those that defeat the immunity defense." *Id.* at 63–64 (cleaned up). Given this "stringent standard," *id.* at 63 (quotation marks omitted), the court declines to decide on

9

initial review whether Chance is entitled to qualified immunity for refusing to assist Plaintiff with obtaining housing while on probation. Accordingly, the court will consider whether Chance's actions may form the basis of a constitutional violation under any of the theories offered by Plaintiff. *See* Compl., ECF No. 1 at 2.

### B. Cruel and Unusual Punishment, Deliberate Indifference, and Due Process

"Although [Plaintiff] alleges both 'deliberate indifference' and 'cruel and unusual punishment' by [Chance], 'these claims are based on the same facts and are different ways of phrasing the same Eighth Amendment claim.'" *Mitchell v. Schauer*, No. 3:23-cv-896 (JAM), 2024 WL 1973434, at *3 n.43 (D. Conn. May 3, 2024) (bracketed material substituted; quotation omitted); *see also Washington v. City of Binghamton*, 152 F.3d 922 (2d Cir. 1998) ("[D]eliberate indifference to medical needs" claims are brought "under the Eighth Amendment's Cruel and Unusual Punishments Clause[.]"); *Quint v. Lantz*, 248 F. App'x 218, 220 (2d Cir. 2007) (summary order) ("To prevail on a cruel-and-unusual punishment claim, a plaintiff must establish both that his medical condition is 'objectively serious,' and that the defendants he seeks to hold liable acted with 'deliberate indifference' to his medical needs.").

"[T]he Second Circuit has 'not addressed where parolees fall on the continuum' between claims of deliberate indifference under the Eighth Amendment and such claims under the Due Process Clause of the Fourteenth Amendment." *Griffith v. AMKC Rikers Island*, No. 1:21-cv-0386 (LLS), 2021 WL 848103, at *4 n.5 (S.D.N.Y. Mar. 4, 2021) (quoting *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (summary order)). But courts within the Circuit have concluded that "an individual who is not 'in custody,' including a

10

probationer or parolee, cannot state an Eighth Amendment claim of deliberate indifference . . . ," *Schlosser v. Elzea*, No. 3:19-cv-1380 (SRU), 2020 WL 887752, at *5 (D. Conn. Feb. 24, 2020), and that "such a claim made by a parolee is appropriately analyzed under the Due Process Clause of the Fourteenth Amendment," instead. *Gibson v. Emps., Supervisors Adm. of Drs. Nurses E. Elmhurst Hosp Med Students*, No. 1:19-cv-0204 (LLS), 2020 WL 5645983, at *5 (S.D.N.Y. Sept. 21, 2020) (internal quotation marks and alterations omitted). *See also George v. Rockland State Psychiatric Ctr.*, No. 10-cv-8091 NSR, 2014 WL 5410059, at *6 (S.D.N.Y. Oct. 23, 2014) (parolee's "claim that he was deprived of psychiatric care [and] that Defendants' alleged actions (or lack thereof) constitute deliberate indifference is . . . appropriately analyzed under the Fourteenth Amendment, not the Eighth."). "[A]s to claims of violations of substantive due process brought by parolees, courts within this Circuit have applied the requirements that pretrial detainees must fulfill to state such a claim – those articulated by the Second Circuit in *Darnell [v. Pineiro*, 849 F.3d 17 (2d Cir. 2017)]." *Gibson*, 2020 WL 5645983, at *5.

To state a Fourteenth Amendment deliberate indifference claim, a plaintiff must satisfy two components, one objective and one subjective. *See Abramovich v. Quiros*, No. 3:23-cv-1330 (VAB), 2024 WL 4803464, at *3 (D. Conn. Nov. 15, 2024). The objective component requires showing an "objective deprivation" of "basic human needs" like "food, clothing, shelter, medical care, and reasonable safety." *Lewis v. Cook*, No. 3:19-cv-01454 (JCH), 2021 WL 4477392, at *8 (D. Conn. Sept. 30, 2021) (quoting *Darnell*, 849 F.3d at 30). A plaintiff "must also establish a '*mens rea*' element: he must show that the defendant-official acted intentionally to impose the alleged condition, or

11

recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Quint v. Robinson*, No. 3:23-cv-226 (VAB), 2023 WL 4850570, at *4 (D. Conn. July 28, 2023).

Especially relevant here, "substantive due process provides a right *against government deprivations*, not a right to government assistance," *LaRock v. Albany Cnty. Nursing Home*, No. 1:19-cv-604 (AMN) (DJS), 2024 WL 1345312, at *4 (N.D.N.Y. Mar. 29, 2024) (emphasis original) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.")), "even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney*, 489 U.S. at 196 (citing, *inter alia*, *Lindsey v. Normet,* 405 U.S. 56, 74 (1972) (no obligation to provide adequate housing under Due Process Clause of Fourteenth Amendment)).

While "shelter" is a "basic human need," *Lewis*, 2021 WL 4477392, at *8, Plaintiff does not allege that Officer Chance deprived him of shelter. Rather, he maintains that she "refused to help Plaintiff with housing." Compl., ECF No. 1 ¶ 22. But "[t]here is no right under the United States Constitution to housing benefits or to assistance with obtaining housing*," Lee v. N.Y.C.H.A. New York City Hous. Auth.*, No. 1:23-cv-11322 (LTS), 2024 WL 455203, at *2 (S.D.N.Y. Feb. 5, 2024) (citing *Lindsey*, 405 U.S. at 74), and thus "the government has no obligation to provide adequate housing," even presuming the allegations to be true. *Id.* (internal quotation marks omitted).

12

Because Officer Chance had no obligation to provide Plaintiff with housing assistance, *see id.*, she did not deprive Plaintiff of anything to which he was entitled. *See, e.g., LaRock*, 2024 WL 1345312, at *5 (concluding government-owned nursing home and its employees were not liable for Fourteenth Amendment substantive due process violation because they "were under no affirmative constitutional duty to provide medical care" to plaintiff). As such, he cannot show an "objective deprivation" necessary to establish the objective component of his Fourteenth Amendment deliberate indifference claim. *See, e.g., Lewis v. Cook*, No. 3:19-cv-01454 (JCH), 2021 WL 4477392, at *8 (D. Conn. Sept. 30, 2021) (concluding that "limited phone calls, restricted visitation, and a lack of access to the law library," while "harsh," "d[id] not rise to a deprivation of a basic human need and therefore are not unconstitutional."). Accordingly, Plaintiff's "deliberate indifference," "cruel and unusual punishment," and "due process" claims, Compl., ECF No. 1 at 2, must be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1). *See, e.g., Davis v. McCleary*, No. 17-cv-00659 (PKC), 2017 WL 2266856, at *5 (E.D.N.Y. May 23, 2017) (concluding that parolee "failed to state a due process violation based on [parole officers'] alleged failure to provide him with necessary medical or 'special' care" and collecting cases with similar conclusions).

### C. <u>Negligence</u>

Plaintiff also asserts a claim for "negligence." Compl., ECF No. 1 at 2. "[N]egligence claims are not cognizable under § 1983[.]" *Dutkiewicz v. Hyjeck*, 135 F. App'x 482, 484 (2d Cir. 2005) (summary order). Thus, this claim must be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

13

### D. Abuse of Process

Plaintiff last asserts a claim for "abuse of process." Compl., ECF No. 1 at 2. "Section 1983 liability may lie for malicious abuse of criminal process, since in the criminal context, malicious abuse of process is by definition a denial of procedural due process." *Zappin v. Cooper*, No. 23-165, 2024 WL 3084015, at *2 (2d Cir. June 21, 2024) (summary order) (cleaned up). A court looks "to state law to find the elements of the malicious abuse of process claim." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). "Under Connecticut law, a plaintiff claiming malicious abuse of process must show that legitimate legal process was used '*primarily* to accomplish a purpose for which it was not designed.'" *Wall v. Cetran*, 100 F.3d 943, at *2 (2d Cir. 1996) (summary order) (emphasis original) (quoting *Mozzochi v. Beck,* 204 Conn. 490, 494 (1987)).

Without further context provided by the complaint, the court construes this claim as relating to Officer Chance's testimony at the revocation hearing, not as relating to her refusal to assist Plaintiff with finding housing (since that did not involve any "legal process"). For reasons stated above, Officer Chance is entitled to absolute immunity as to any claim arising from allegations that she gave false testimony. Accordingly, this claim is dismissed under 28 U.S.C. § 1915A(b)(2) as "seek[ing] monetary relief from a defendant who is immune from such relief."

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's complaint is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b)(1). If Plaintiff believes he can supply allegations that

14

overcome the court's reasons for dismissal, he may file an amended complaint realleging his claims on or before August 29, 2025.

    SO ORDERED at Hartford, Connecticut, this 30th day of July, 2025.


                                                        /s/
                                      Omar A. Williams
                                      United States District Judge